IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | | |
| v. | : | Case No. 3:16-cr-124 |
| JOSE LUIS HERNANDEZ-RUIZ, | | JUDGE WALTER H. RICE |
| Defendant. | : | |

---

DECISION AND ENTRY OVERRULING DEFENDANT JOSE LUIZ HERNANDEZ-RUIZ MOTION TO SUPPRESS DOCUMENTS SUPPORTING THE DEFENDANT'S PREVIOUS DEPORTATION ORDER (DOC. #16); EVIDENCE REGARDING DEFENDANT'S PRIOR REMOVAL FROM THE UNITED STATES MAY BE USED AGAINST HIM AT TRIAL

---

Defendant Jose Luis Hernandez-Ruiz ("Defendant") is charged with being in Miami County, Ohio, having previously been "deported or removed from the United States on or about March 15, 2011[,] and March 24, 2011," and "without having obtained [] express consent . . . to apply for readmission to the United States following his deportation or removal." Doc. #12, PAGEID #43. This matter is currently before the Court on Defendant's Motion to Suppress Documents Supporting the Defendant's Previous Deportation Order ("Motion"). Doc. #15. The Court held a hearing on same on December 5, 2016. For the reasons set forth below, the Court overrules the Motion.

I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

      In February 2011, Immigrations and Customs Enforcement ("ICE") Deportation Officer William Belanich ("Belanich"), who is fluent in Spanish, spoke with Defendant, who was being detained at the Butler County, Ohio, Jail.  Doc. #19, PAGEID #89.  Belanich sought to determine whether Defendant:  (1) wished to have a hearing before an Immigration Judge ("IJ"); (2) wished to assert a claim of fear; or (3) would agree to his expedited removal from the United States.  *Id.*, PAGEID #94.  Belanich presented a Spanish-language document to Defendant (hereinafter referred to as the "Stipulation") which, if Defendant agreed to its terms, would allow ICE to expedite the process of removing Defendant from the United States.  Defendant, at Belanich's request, read the Stipulation to himself and recited paragraphs two, three, five and ten of the Stipulation to Belanich.  *Id.*, PAGEID #69.  Satisfied that Defendant could read and understand written Spanish, Belanich provided Defendant with a "Notice of Rights," and asked Defendant to read the Notice of Rights and the options available to him.  The Notice of Rights specified that Defendant could:  (1) request a hearing before an IJ; (2) "assert a claim of fear to be resolved by an immigration court"; or (3) "admit that he was illegally present in the United States and waive any immigration hearing."  Doc. #22, PAGEID #146 (citing Doc. #19, PAGEID #79-81, 91-92).  After reading the Notice of Rights, Defendant chose the third option by checking the "waiver box" and signing the Notice of Rights, indicating that he admitted to being in the country illegally and wished to waive his right to any proceedings before an IJ.  *Id.*, PAGEID #93-94.

      After Defendant signed the Notice of Rights, Belanich provided Defendant with:  (1) a list of free legal services; (2) a "Notice to Appear," which informed Defendant of the

2

law that he had violated; and (3) a "Notice of Custody Determination," which informed him that he would be jailed without bond. Doc. #19, PAGEID #93-97. Belanich then re-presented the Stipulation to Defendant, and again asked him to read the document and recite paragraphs two, three, five and ten. *Id*., PAGEID #99-100. Included in those paragraphs was sub-paragraph 5b, which indicated that Defendant "would have the right to a hearing before an [IJ] and determine whether or not [he was] eligible to apply for relief." *Id*., PAGEID #102. The Stipulation also included paragraphs six and fourteen, which indicated that, by signing the Stipulation, Defendant would waive his right to appear before an IJ and any right to appeal the IJ's decision on removal, respectively. *Id*., PAGEID #75; Doc. #20, PAGEID #126.

After again confirming to Belanich that he could read and understand written Spanish, Defendant signed the Stipulation, by which he agreed to expedited removal from the United States. Doc. #19, PAGEID #102-03. At the same time Defendant was signing the Stipulation, Belanich again provided Defendant with a list of free legal services. *Id*., PAGEID #103-04.

Belanich delivered the signed Stipulation to IJ Thomas Janas, who, on or about March 4, 2011, ordered that Defendant be deported to Mexico; Defendant's deportation occurred on or about March 15, 2011. Doc. #19, PAGEID #109-13. On or about March 21, 2011, Defendant was apprehended in the United States, and was again removed from the country on or about March 24, 2011. *Id*., PAGEID #113-14. On or about September 2, 2016, Defendant was located in Miami County, Ohio, and on or about September 29, 2016, a Grand Jury indicted Defendant for illegally entering the United States after previously being removed from the country, in violation of 8 U.S.C. §

3

1326(a)(1-2). Doc. #12, PAGEID #43. At no point prior to the filing of the instant Motion did Defendant challenge the propriety of his prior removals from the country; nor did he ever apply to the Attorney General or the Department of Homeland Security for lawful readmission.

## II.  LEGAL STANDARDS

In his Motion, Defendant is attacking the validity of the March 4, 2011, removal order that forms the basis of the alleged 8 U.S.C. § 1326(a) violation.  A removal order carries with it a heavy presumption of regularity, *U.S. v. Adame-Orozco*, 607 F.3d 647, 651 (10th Cir. 2010),  and collateral attacks on such orders, such that they cannot be used as evidence in a criminal proceeding under 8 U.S.C. § 1326(a),  are sharply circumscribed:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that—
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

When, as here, the Defendant waived his rights to administrative or judicial proceedings, he may only meet his burden under 8 U.S.C. § 1326(d) by showing that: (a) the circumstances under which the waiver was obtained were so unfair to Defendant that the waiver was not knowing, voluntary and intelligent; and (b) the unfairness of the waiver meant that the subsequent removal order was a gross miscarriage of justice, in

4

violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. See *U.S. v. Martinez-Rocha*, 337 F.3d 566, 568-69 (6th Cir. 2003) (citing *U.S. v. Mendoza-Lopez,* 481 U.S. 828, 840, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987); *U.S. v. Muro-Inclan,* 249 F.3d 1180, 1183 (9th Cir. 2001)); see also *Mendoza-Lopez*, 481 U.S. at 836 n.12 (citation omitted) (noting that a "collateral attack on [a] deportation proceeding in later deportation proceeding [is] impermissible unless there was 'gross miscarriage of justice' in the former proceeding").

### III. ANALYSIS

Defendant argues that the evidence of the prior deportation order should be suppressed because (A) his signing of the Stipulation was the product of a fundamentally unfair process; and (B) Belanich allowed him to sign the Stipulation without ascertaining whether Defendant actually understood the document or its implications. Thus, he argues, the removal order was fundamentally unfair, and cannot be used as evidence against him. Doc. #20, PAGEID #136-37, 140-41 (citing 8 U.S.C. § 1326(d); *Ramirez-Molina v. Zilgar*, 436 F.3d 508, 514 n.9 (5th Cir. 2006)). The Court addresses Defendant's arguments in turn

#### A. Defendant's Signing of the Stipulation Comported with Due Process

Defendant notes that, without counsel (legal or otherwise) present, Belanich presented him with the Notice of Rights; the Notice of Rights included, as part of the third option (waiver of any administrative or judicial proceedings), an admission that he was in the United States illegally and wished to return to his country of origin as quickly as possible. Doc. #23, PAGEID #159. Belanich testified that he did not explain to

5

Defendant the implications of each of the options in the Notice of Rights. Doc. #19, PAGEID #85. Finally, it was only after Defendant agreed to the third option that Belanich gave him the list of legal services with which he could consult free of charge. Doc. #23, PAGEID #159. Taken together, Defendant argues, Belanich elicited incriminating information from him without adequate safeguards and set into motion both his signing of the Stipulation, by which he waived his rights to administrative proceedings and judicial review, and the March 4, 2011, removal order. *Id*., PAGEID #162-63. Thus, Defendant claims, his waiver of rights was not knowing, voluntary and intelligent, and the removal order was a violation of the Fifth Amendment. Doc. #20, PAGEID #136-37 (citing *Ramirez-Molina*, 436 F.3d at 514 n.9).

Belanich's conversation with Defendant was administrative in nature, with no "contemplation of any kind of criminal case." Doc. #19, PAGEID #117. Thus, contrary to Defendant's argument, Doc. #23, PAGEID #159, his Fifth Amendment protection against self-incrimination was not implicated. Further, the law is clear that Defendant was not entitled to have an attorney present during that conversation. *U.S. v. Baptist*, 759 F.3d 690, 696-97 (7th Cir. 2014) (citing 8 C.F.R. § 1003.25(b)). Defendant argues that lack of counsel "is certainly a factor in the circumstances to be considered by this Court in its inquiry into whether this Stipulation was knowing and voluntarily give[n and w]hether it was considered and intelligent." Doc. #23, PAGEID #158. However, even if Defendant's assertion is correct, absence of counsel is not itself sufficient to render a waiver of rights unknowing, involuntary or unintelligent.

Further, prior to checking the waiver box, Defendant read to Belanich four paragraphs of the Stipulation which contained, among other items: a statement that

6

ICE believed that Defendant was in the country illegally; a recitation of his rights (including the right to appear before an IJ); and a waiver of any right to apply for asylum (*i.e.*, asserting a claim of fear). Doc. #19, PAGEID #69-74. In asking Defendant to read the above, Belanich ensured that Defendant understood the substance of the other two options available to him in the Notice of Rights. Thus, Belanich did not err in failing to explain in detail the implications of Defendant checking the waiver box.

Alternatively, Defendant notes that Belanich did not ask him to recite paragraphs six and fourteen, "which dealt with this Stipulation being presented to an immigration judge and a formal order of removal being issued" and "waiv[ing] his right to appeal the immigration judge's decision[,]" respectively. Doc. #20, PAGEID #126. He argues that Belanich's failure to do so meant that he did not have full knowledge of the rights he was giving up, and thus, his signing of the Stipulation violated due process, which, in turn, rendered the removal order fundamentally unfair. *Id.*, PAGEID #127, 140-41.

Defendant's argument is unavailing for three reasons. First, assuming *arguendo* that Belanich's failure to have him recite paragraphs six and fourteen constituted error, Defendants cites no caselaw for the proposition that such error is sufficient to render the waiver of rights fundamentally unfair. Second, Defendant twice indicated to Belanich that he could read Spanish and that he had read the entire Stipulation—presumably including paragraphs six and fourteen. *See* Doc. #19, PAGEID #69, 101. Third, and most importantly, Defendant, at Belanich's request, twice recited paragraph five of the stipulation. That paragraph stated that, if he chose not to sign the Stipulation, he "would have the right to a hearing before an immigration judge[, who would determine] whether or not [Defendant was] eligible to apply for relief." *Id.*, PAGEID #102. Thus, paragraph

7

six—informing Defendant that, by signing the Stipulation, a removal order would be issued by an IJ, *id*,. PAGEID #75—is nothing more than the logical conclusion of paragraph five. Further, paragraph fourteen discusses a right to appeal the IJ's decision, which Defendant necessarily (albeit implicitly) renounced by signing the Stipulation. In other words, even if paragraph fourteen had not appeared in the Stipulation, its absence would not have constituted sufficient error to render the waiver incompatible with due process.

<u>Finally</u>, and contrary to Defendant's argument, checking the waiver box on the Notice of Rights did not inevitably lead to Defendant signing the Stipulation. Checking the waiver box did nothing more than allow Belanich and Defendant to proceed with the discussion as to whether Defendant would agree to the Stipulation. Doc. #19, PAGEID #93-94. Immediately after Defendant checked the waiver box, Belanich presented him with the list of legal service providers with which he could consult at no cost, then asked him again to read the Stipulation and recite paragraphs two, three, five and ten. *Id*., PAGEID #93-94, 101-02. As discussed above, those paragraphs detailed the rights he would be waiving by signing the Stipulation. At any point after receiving, for a second time, a copy of the Stipulation, Defendant could have stopped the interview and chosen to exercise his right to appear before an IJ or assert a claim of fear. Defendant's decision to sign the Stipulation—his actual decision to waive his rights—was made with full knowledge of his ability to seek counsel or exercise the rights he was giving up.

In sum, Belanich implemented safeguards to ensure that Defendant could execute a voluntary and intelligent waiver of his rights by signing the Stipulation. Thus, Defendant's signing of the Stipulation, and the subsequent removal order, did not

8

constitute a "gross miscarriage of justice" in violation of the Due Process Clause of the Fifth Amendment.

### B.     Defendant Demonstrated Comprehension of the Stipulation

Defendant, in his Motion, claims that he "has less than a sixth grade education and has difficulty reading Spanish." Doc. #15, PAGEID #48. Further, he notes that Belanich did not ask Defendant about his education level, Doc. #19, PAGEID #84, and made no effort, beyond asking Defendant to confirm that he could read Spanish and reciting certain paragraphs of the Stipulation, to ensure that "he comprehended it and its meanings and its implications." Doc. #20, PAGEID #125-26. The inadequate steps taken by Belanich to ensure comprehension, Defendant argues, meant that the Stipulation was not a knowing waiver of his rights, and the resultant removal order was fundamentally unfair. *Id.*, PAGEID #140-41.

Defendant's argument is belied by Belanich's testimony, which is not contradicted by evidence of record. Belanich testified that prior to signing a document, a prisoner must "convince me he's understood it. And before he even signs it, if he doesn't understand anything in it[,] I could stop the proceedings right there." Doc. #19, PAGEID #83. Also, Belanich testified that it was his practice to determine whether a prisoner has the requisite literacy before even going over the Notice of Rights, much less the Stipulation, *id.*, PAGEID #91, and he did so by asking Defendant to recite paragraphs two, three, five and ten of the Stipulation. *Id.*, PAGEID #69.

Further, Belanich had been an ICE deportation officer since 2008, and in that capacity, he interacted with Spanish-speaking prisoners on a near-daily basis, in the context of those prisoners deciding whether to waive their rights to appear before an IJ

9

or to assert a claim of fear. Doc. #19, PAGEID #88-89. Belanich's experience, and the fact that he was the individual actually speaking with Defendant, means that his judgment that Defendant understood the Stipulation, and Belanich's determination that he could make that judgment call after having Defendant twice read the Stipulation and recite portions of it, are entitled to substantial deference. *Id.*, PAGEID #69, 99-102. As Defendant cites no caselaw or regulation suggesting that the procedures followed by Belanich to ensure comprehension were inadequate, the Court must conclude that, through signing the Stipulation, Defendant's waiver of his right to appear before an IJ or assert a claim of fear was knowing.

Thus, the removal order based on the Stipulation was not a gross miscarriage of justice in violation of the Fifth Amendment, *Mendoza-Lopez,* 481 U.S. at 836 n.12, and Defendant cannot show that the removal order was fundamentally unfair. Since Defendant cannot show that he exhausted his administrative remedies, or that he was denied judicial review, he cannot make the showing required under 8 U.S.C. § 1326(d) to rebut the *prima facie* validity of the removal order. Accordingly, that order and any supporting documents may be used against Defendant at trial.

## IV. CONCLUSION

For the reasons set forth above, the Court OVERRULES Defendant Jose Luis Hernandez-Ruiz's Motion to Suppress Documents Supporting Defendant's Previous Deportation Order. Doc. #15. Such evidence may be used against him at trial.

Date: March 8, 2017                              _____
                                                 WALTER H. RICE
                                                 UNITED STATES DISTRICT JUDGE